Good morning. Good morning. May it please the court. I'm John Minster. I represent the appellant, Max Anderson. He's with me at the council table. I'd like to introduce him to the court. Good morning. Good morning. Also with us today are Max's parents, Scott and Cindy Anderson, along with my wife and retired law partner, Ms. Kim Kaney. In this appeal, we seek reversal of the district court's summary judgment order, and all we're asking for is the opportunity to present our case to a jury. Reversal should be granted for the following reasons. First, the district court used the wrong standard regarding the severity of the force involved. The Ninth Circuit has held that the pointing of a gun at someone may constitute excessive force, even if it does not cause physical injury. Recently, in the Espinoza case, the circuit emphasized that pointing a loaded gun at a suspect, employing the threat of deadly force, is the use of a high level of force. In Washington, pointing a gun at someone, whether it's loaded or unloaded, is a felony. And perhaps the most eloquent description of the impact of police aiming firearms at civilians, unarmed civilians, is found in Judge Betty Fletcher's opinion for the panel in Robinson v. Solano County, wherein she wrote, Pointing a gun at a person can cause severe psychological trauma. It is tantamount to a death threat. And the threat posed by a pointed gun is not just theoretical. We are all aware of the many tragic incidents in which guns are fired accidentally. The judge below labeled aiming a gun at someone as minimal force as a matter of law, and that is not the legal standard in our circuit. He also said that it was momentary, but that's not accurate, given Max Anderson's declaration and the contents of his deposition. The judge below did not view the evidence in the light most favorable to Max Anderson, the non-moving party. And by labeling the gun pointing as he did, he drew inferences in favor of the police, the opposite of the proper role in the summary judgment setting. This court should reverse the judge below on the severity of force issue. Second ground for reversal. The district court used the wrong standards regarding the level of threat required to justify the force used. The most important single element of the three Graham factors is whether the suspect poses an immediate threat to the safety of the officers and others. In his order, the judge below found that Mr. Anderson, and I quote, willingly came forward with his hands in the air and complied with all orders from the officers, end quote. The judge below did not find that Mr. Anderson posed an immediate threat. Instead, he said that he posed a threat as a matter of law due to his past driving, and that was error. The word immediate in this factor means what it says. The facts which are claimed to constitute a threat must be occurring at the time the guns are pointed in order to satisfy the immediate threat requirement. On this record, viewing the evidence in the light most favorable to the plaintiff, a jury could certainly find that Mr. Anderson, the son of one of the defendant's fellow officers, that being his father, Scott Anderson, Mr. Anderson did not pose an immediate threat. And I should add and emphasize our significant, substantial evidence that the officers knew exactly who Max was the minute they laid eyes on him in the parking lot. The third ground for reversal is that the district courts... Can I ask you a question on that? Sure. I don't quite understand how you can be certain on that evidence. I know that Mr. Anderson has said that he thinks they would have recognized him, but unless they say they recognized him, what's the evidence of what's in their mind? There's evidence in... And, you know, they can't know who it is until he walks out. And when he walks out, he says they would have recognized him. What's the substantial evidence that they really did recognize him? The substantial evidence is that the officers had been to the Anderson home. The families had socialized together. They knew what he looked like, were familiar with his appearance. Officer Christopher, one of the defendants, had stopped Max and given him a warning ticket, I believe about a week before. And to do that, you have to identify the person and have their name. Scott Anderson, Max's father, the former Bainbridge Island police officer, his declaration describes how the police car has a powerful searchlight that can light up people and objects at a distance of 100 yards. Max's declaration, I think, indicates he was either 15 to 30 feet away from the police car when they drove up because he's in the parking lot walking. The car comes into the parking lot while he's out walking. He walks towards the police car. They're shining their spotlight right at him. They pull up to within, I think it's some 15 to 30 feet. They've got the spotlight on him. A jury could find, regardless of the officer's denials, a jury could find that they recognized him. Okay, so your evidence raises, you believe, under the old formulation, a genuine issue of material fact or under the new Rule 56 language, a genuine factual dispute whether they actually knew who he was when they pointed the guns. Yes, there's sufficient evidence for the jury to find that they knew who he was. Is that material, I guess we can ask your adversary this, but is that material, given that this was midnight and what had happened before, before he drove into the parking lot and what the police made, is the fact that they recognized him material to what they did when the police drove into the parking lot while they were still concerned about the behavior that they'd seen in driving? It's material insofar as this, if they do know who he is, therefore he's not a stranger to them. They know that they're meeting with the son of one of their fellow officers, somebody who they've known, whose home they've been to. That's material to that. It's material because he's not a complete stranger. He's not an unknown to them. And I would, so I think it is material in that sense. When did they draw their guns? When they get out of the car. His evidence is they both draw guns and point them at him. Correct. Their evidence is one of them didn't draw a gun and the other just drew it to a ready position. But we accept his version for summary judgment purposes. Yes. Okay. The third ground for reversal is that the district court's armed until proven unarmed approach is an error. The district court asserted that even if Mr. Anderson was apparently unarmed, the gun pointing was necessary as a matter of law. The judge said the police must be sure a suspect is not armed and there is no such rule. The Fourth Amendment requires particularized facts. They had no evidence that he was armed and, of course, in truth he wasn't. The police are not allowed to presume that everyone is armed and they're not allowed to point their guns at everyone they see until the person is searched. We respectfully contend that the judge below applied an incorrect standard. The fourth ground for reversal is that the district court erred in apparently ruling against Mr. Anderson on the evading resisting arrest gram factor. Even though he approached the police unarmed with his hands in the air and complied with commands, a jury could find on this record that Max was not actively resisting arrest or attempting to evade arrest by flight as he walked towards the officers. Okay, you've got less than a minute left. If you'd like to reserve a little bit for rebuttal, you can. I will reserve the rest for rebuttal. Thank you. We'll give you a full minute. Thank you very much, Your Honor. I think we'd like to hear from your adversary. May it please the Court. My name is Marian McConaughey. I represent the appellees, the police officers, and the city. Let me just jump to the question that the courts have asked about the issue of recognizing Max. The officers have both stated that they were focused on his hands. They certainly weren't expecting to see Max or somebody they knew. As you know, there'd been a high-speed chase, turned off his lights, drove in a reckless manner, and then tried to hide in this dark industrial area. They actually had to back off, and they wanted to wait for backup to even go in there, so obviously they weren't expecting to see him. Had no idea whether they were going to be confronting, you know. They called for backup before they turned into the parking lot. Correct, and waited until the backup came. And, of course, they didn't know if there was one person or four people in the car. Had no idea if that person might have weapons or, you know, whatever, or serious offenses. But they will say they did not recognize him. Certainly weren't expecting to see him. That's what they've said in their deposition. Right. And then the question on the other side that was asked of Mr. Anderson in his deposition, well, how do you know that? Why do you think they recognized you? Did they say anything? Did they say, hey, Max, what are you doing? They did when they came up and put the handcuffs on him, but the guns weren't out at that point in time. He doesn't have any evidence other than speculation, and it's focused on, well, they were putting this high beam light on me. Again, at that point in time, they will tell you, and their training is watch his hands. That's what we're concerned about. They were concerned about officer safety. So is your client's position is that there is no genuine issue of fact as to whether they recognized him? I think it's twofold. First of all, it would be speculative for anybody to kind of jump in and say they did recognize him when they've explained why they didn't. You know, we're talking about a short period of time. Now, if they're going to try to prove they did recognize him, what's the purpose of that, other than to show some kind of intent? Remember, the only the standard we're looking at is the objective reasonableness of the officer's actions at that time, given what they knew at the time, not what we can think about or project about later. Go ahead. It seems to me that with an objective standard, that what objectively a police officer, what level of force they would use, could be related to whether they know the suspect in front of them. If they recognize this is my next-door neighbor I've known for 30 years, then they might have a good reason to suspect their neighbor, or in this case the son of someone they know isn't armed. Of course, we know they're saying here they didn't. So the question is, were they negligent? Is that the standard? Were they negligent because they didn't? I'm raising the question whether there's an issue of fact as to whether they did that a jury or a judge has to decide. First of all, I guess my answer is twofold. One, to have an issue of fact, you have to go beyond speculation. I've already told you what the evidence will be. Max doesn't say they said anything that indicated recognition. He said, well, they were shining that light on me, they should have. They will say, no, we were looking at his hands. This was a short period of time, it's dark, et cetera. So somebody's going to have to speculate that maybe Max is right. Okay, that's one issue. The legal standard, it's a question of whether it's a reasonable inference, giving all inferences to the plaintiff. Whether it's a reasonable inference that they knew who he was. If that is an issue of fact, I do not believe that that is a matter that should take us to trial. If that's the factual matter, I don't. But I don't know that I've answered your question. Is it really material whether they recognized him? No. Do we really want to write an opinion that says that if they know the guy because they know who his father is and they know that they have to treat him differently than they would treat anybody else in the world? Exactly. And especially that they would have to treat him differently and make that calculation in the tenths of seconds we're talking about. I think we have to remember the context here. There's this heavy emphasis on the use of force. This is a drawing and pointing a weapon not to, the officers would say, really not to intimidate this person at all. They said it already. They're doing this because they are trained. This is a tense situation we're in. We don't know who we're dealing with. We don't know if there are other suspects. We don't know if they're behind him. They're going to be behind us in the bushes and they're going to attack us so somebody can get away. We have no idea what we're dealing with. We want that gun out so we can react if something unexpected happens. And essentially, you know, this gets me into responding to, and I don't want to pass over this issue of the recognition if there are still matters to address, but I think it's very important for me in the limited time I have to talk about this notion that officers, once somebody is walking towards you and cooperating, no problem. And if you accept Mr. Anderson's theory, any time any suspect is cooperating, the officers have zero opportunity to have their guns ready or pointed. And remember, that is what is going to allow them to save critical tenths of a second if something untoward should happen. That is not the law, and that would be wrong. The two, it's not just the question of the rights of this individual. They're important rights, and of course we want to protect a Fourth Amendment right, but there is a countervailing governmental interest in officer safety, and those have to be properly balanced under all the circumstances. It doesn't rely upon this kind of cookbook approach, like when I draw and point a gun, that's a severe use of force. That's not the standard. The standard is the totality of the circumstances and the reality of what the officer is facing, and the recognition he could be wrong. He doesn't know what he's facing. And I take it it's not the subjective reaction of the person who's having the weapon pointed that is the... No. The question is did he, under those circumstances, did he do what was reasonable given what he knew, and also you've got to think about given what he didn't know. And that's what we have to look at, and that's why an overemphasis on the two matters he's talking about that this is a very severe use of force, and especially the notion that just because someone is momentarily cooperating, there is no authority to use any force. Even if they recognize? Even if they recognize. Okay. I want to just point out real quickly that the authority on this is a U.S. Supreme Court called Rattel. If you'll remember in that case, officers are executing a search warrant. They're going to a residence where the suspect moved three months before. They come in upon completely innocent people in bed, naked. They order them out of bed at gunpoint and hold them naked at gunpoint for two minutes. Now, they can see they don't have any guns on them. The Supreme Court said, you know what? The officers have got to maintain control until they know what they have. There's no reason to just to be... Just because he can't see a gun doesn't mean there isn't a gun there. I think we understand. Good. All right. Are there any further questions? Anything else? Thank you. Thank you. Thank you. I want to emphasize that all we are asking for is the opportunity to present this case to a jury. A jury could consider Max's cooperation, his hands in the air. I'm the guy you're looking for. His T-shirt, jeans, and deciding, among other circumstances, whether the force that was used was reasonable. The use of force is permissible only when a strong governmental interest compels the employment of such force. The circuit so held in the Drummond case. And where there is no need for force, any force used is constitutionally unreasonable. As the circuit has observed in the Lawley case and the Fontana case. Yes, but you would agree that the need for the force has to be judged in the totality of the circumstances at the time, not in 20-20 hindsight. That's true. And we have a well-established method of analysis for excessive force cases that we've been going through. A jury could find, based on this record, that the gunpointing was unnecessary and unreasonable under the Fourth Amendment. Once again, all we ask is that you give us the chance to present our case to a jury. Give the Anderson family their day. Could you address the government's argument, the city's argument, that there's no competent evidence that the officers knew that they were dealing with this young man? That question of recognition, I'm just one judge, but it's looming in my mind as significant. The government gives a fair argument that it's basically that. That the evidence contradicting what the officers said, they said they didn't recognize him, right? The government says the other evidence is speculative. So what's your response to that? First of all, I don't think that if you say the officer, as you point out, the officers say they didn't recognize him. And if we're drawing inferences in favor of the police and against the non-moving party, that would be one thing. But the objective evidence, his distance from the police car, the power of the searchlight on the car to illuminate, the fact that Officer Christopher had had contact with him one week previously, issued a warning citation, he knows who he is, the short distance, relatively short distance between the two, a jury could find that the officers are not being candid when they say that they did not recognize him. In terms of excessive force law, is it viable to have a doctrine that says the police can use one level of force when they're dealing with a stranger and have to use a lower level of force if they're dealing with the son of a fellow officer? I'm not asking for that kind of a ruling. I'm simply pointing out the fact that if they recognize him, if the jurors conclude that they recognized him, that's one of a number of facts they can take into consideration in evaluating the totality of the circumstances. All right. You have more than used your time. We've helped you. The Court appreciates the quality of the arguments presented in the case. You have both represented your clients very well. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Alarcon, Gould